WELLS FARGO BANK NORTHWEST, N.A., Plaintiff,

v.

TACA INTERNATIONAL AIRLINES, S.A. and JHM Cargo Express, S.A., Defendants.

TACA International Airlines, S.A. and JHM Cargo Express, S.A., Third-party plaintiffs,

v.

C–S Aviation Services, Inc., Third-party defendant.

No. 01 Civ. 11484(GEL).

United States District Court, S.D. New York.

Aug. 29, 2003.

Benjamin R. Nagin, Alan M. Unger, Sidley Austin Brown & Wood LLP, New York City, for Plaintiff Wells Fargo Bank Northwest, N.A.

William J. Brown, Miami, FL, for Defendants TACA International Airlines, S.A., and JHM Cargo Express, S.A.

*OPINION AND ORDER*

LYNCH, District Judge.

On June 4, 2003, this Court entered final judgment for plaintiff Wells Fargo Bank Northwest, N.A. ("Wells Fargo"), on its claims for breach of contract, and dismissing the counterclaims and third-party complaint of defendants TACA International Airlines, S.A., and JHM Cargo Express, S.A. For the merits of the dispute, *see Wells Fargo Bank v. Taca International Airlines,* 315 F.Supp.2d 347, 2003 WL 21180415 (S.D.N.Y.2003), and *Wells Fargo Bank v. Taca International Airlines,* 247 F.Supp.2d 352 (S.D.N.Y.2002). Defen-

dants have appealed from this Court's judgment, as is their right, but rather than proceed expeditiously to present the merits of their arguments to the Court of Appeals, they have resorted to a series of piecemeal efforts to delay appellate resolution of the case, perhaps for the purpose of delaying this litigation in the hope that defendants may prevail in their own parallel lawsuit in El Salvador before the judgment here becomes final. This Court has already rejected defendants' meritless motion to reopen the case to present defenses allegedly overlooked by prior counsel. *Wells Fargo Bank v. Taca International Airlines,* No. 01 Civ. 11484(GEL), 2003 WL 21878794 (S.D.N.Y. Aug. 7, 2003). Defendants continue their efforts with an extraordinary motion to dismiss the case for lack of federal subject matter jurisdiction. The motion will be denied.

■ The motion is extraordinary, in part, because it was defendants themselves who invoked the jurisdiction of this Court. Wells Fargo originally brought this action in the courts of the State of New York. Defendants removed the case to this Court, asserting federal jurisdiction by reason of diversity of citizenship, and then proceeded further to invoke federal jurisdiction by asserting counter-claims and third-party claims that included a federal claim based on the Racketeer–Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968. Having brought the case here in the first place, vigorously litigated the matter, and lost, defendants have little equity in now claiming to have belatedly discovered that lurking beneath the surface of the apparent diversity of citizenship of the parties is a dispute between aliens over which the federal court lacks diversity jurisdiction. Equity, however, has nothing to do with the matter. The federal courts are courts of limited jurisdiction; those limitations are strictly set by Congress and are of constitutional dimension. Parties may not confer subject matter jurisdiction

on the federal courts by estoppel or waiver, *Marcella v. Capital Dist. Physicians' Health Plan, Inc.,* 293 F.3d 42, 46–47 (2d Cir.2002), and a federal court must be prepared to question its jurisdiction at any time, even after judgment or on appeal. *Mignogna v. Sair Aviation, Inc.,* 937 F.2d 37, 40 (2d Cir.1991).

Accordingly, the Court sought full briefing of the issue, and has carefully considered the arguments of the parties. For the reasons that follow, the motion will be denied.

## DISCUSSION

### I. Jurisdiction When Judgment Was Entered

■ Defendants argue that the case was improperly removed, because the real parties in interest on both sides are foreign corporations. Wholly apart from the lack of merit of that argument, however, defendants appear to be asking the wrong question. The Second Circuit has held that even if a case is improperly removed, remand for lack of jurisdiction is not required if the federal district court had jurisdiction at the time judgment was entered. *Barbara v. New York Stock Exchange, Inc.,* 99 F.3d 49, 55–56 (2d Cir. 1996); *see also Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 64, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) ("[A] district court's error in failing to remand a case improperly removed is not fatal to the ensuing adjudication if federal jurisdictional requirements are met at the time judgment is entered."). In *Barbara,* defendant had removed the case from state court invoking federal question jurisdiction. On appeal, the Second Circuit *sua sponte* raised the question of subject matter jurisdiction, and determined that the removal had been improper and that "the district court erred in exercising removal jurisdiction over this action." 99 F.3d at 53.

Nevertheless, the Court of Appeals refused to remand the case to state court. "A federal appellate court will not remand a case to state court, however, if the federal district court would have had subject matter jurisdiction if the suit had been filed in federal court in the posture it had at the time of the entry of final judgment." *Id.* at 55–56. Noting that plaintiff had effectively amended his complaint to assert federal causes of action, the Court held that remand was unnecessary, since the federal court had jurisdiction over the case when judgment was entered.

*Barbara* controls here. Even assuming arguendo that this case was improperly removed—a contention rejected in Part II below—by the time judgment was entered, federal jurisdiction was present. In this case, it was defendants, not plaintiff, who themselves injected federal questions into the case, by asserting claims sounding in federal law against plaintiff and a third-party defendant after the case had been removed to federal court.

■ Defendants seek to distinguish *Barbara* by pointing out that in that case the *plaintiff* had amended his complaint to assert federal claims, thus creating a complaint that could have been removed in the first place, while in this case the federal cause of action was part of defendants' counterclaim; they cite the principle that "the grounds for removal must inhere in the plaintiff's claim, rather than be based on a defense or counterclaim." 14B Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3721 at 319 (3d ed.1998). But this argument misses the point. Wells Fargo is not claiming that the counterclaim would have provided a basis for removal in the first instance; indeed, at the time of removal, no federal counterclaims had yet been asserted. To the contrary, as in *Barbara*, Wells Fargo's argument is premised on the assumption that removal was *not* proper. Rather, the question presented is whether this Court had federal question jurisdiction as of the time that the judgment was entered. Here, defendants asserted federal claims against Wells Fargo and another party, which claims were sufficient to invoke federal jurisdiction; the Court then had supplemental jurisdiction over the various other related claims of all parties. Just as a plaintiff cannot challenge removal jurisdiction when, after objecting to removal, it "voluntarily amends the original complaint to allege a federal cause of action," *Kidd v. Southwest Airlines*, 891 F.2d 540, 547 (5th Cir.1990), a defendant may not object after judgment to the propriety of federal jurisdiction when it has itself presented federal claims to the federal court.

Defendants' argument is foreclosed by *Fax Telecommunicaciones, Inc. v. AT & T*, 138 F.3d 479 (2d Cir.1998). There, the Second Circuit applied the *Barbara* principle where the defendant's counterclaim provided the basis for federal jurisdiction at the time of judgment. *Id.* at 487–88 ("AT & T's counterclaim plainly arose under federal law.... As in *Grubbs [v. General Elec. Credit Corp.*, 405 U.S. 699, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972) ], *Mackay [v. Uinta Dev. Co.*, 229 U.S. 173, 33 S.Ct. 638, 57 L.Ed. 1138 (1913) ], and *Barbara*, the district court below had jurisdiction over the dispute at the time it entered judgment. In the absence of an objection to removal in the district court, we will not disturb the district court's judgment based on the improper removal of the case from state court."). Defendants claim that *Fax Telecommunicaciones* is "almost certainly no longer good law" in light of *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 122 S.Ct. 1889, 153 L.Ed.2d 13 (2002). (D. Reply 4.) It is not for this Court to overrule binding Second Circuit precedent. But if the power were ours, we would still decline the invitation. Like defendants' other arguments,

this one confuses the requirements for original jurisdiction with the determination of jurisdiction post-judgment. In *Holmes Group,* the Supreme Court held that a case did not "arise under" federal patent law where defendants asserted a patent law counterclaim. 535 U.S. at 831, 122 S.Ct. 1889. The issues are radically different when the jurisdictional question is raised after judgment. As the Supreme Court held in *Caterpillar,* "To wipe out the adjudication postjudgment, and return to state court a case now satisfying all federal jurisdictional requirements, would impose an exorbitant cost on our dual court system, a cost incompatible with the fair and unprotracted administration of justice." 519 U.S. at 77, 117 S.Ct. 467. Indeed, *Holmes Group* expressly distinguished the "arising under" question being addressed there from the question of a district court's "retaining jurisdiction" based on a counterclaim once a case was already before it. 535 U.S. at 834 n. 4, 122 S.Ct. 1889.

■ As the Second Circuit recently reminded us, once the "district court has proceeded to final judgment, considerations of finality, efficiency and economy become overwhelming, and federal courts must salvage jurisdiction where possible." *United Republic Ins. Co. v. Chase Manhattan Bank,* 315 F.3d 168, 170 (2d Cir. 2003). Given that defendants themselves invoked federal jurisdiction, not only by removing the case in the first place, but also by subsequently amending their pleadings to inject federal questions into the case by recharacterizing the dispute as one of federal RICO law, considerations of fair play point in the same direction, for a party is not "permitted to invoke the jurisdiction of the federal court, and then disclaim it when he loses." *Bernstein v. Lind–Waldock & Co.,* 738 F.2d 179, 185–86 (7th Cir.1984) (quoting *Brough v. United Steelworkers of America,* 437 F.2d 748, 750 (1st Cir.1971)). Since this Court had subject matter jurisdiction when judgment was entered, the motion must be denied even if defendants' initial removal was improper.

## II. *Propriety of Removal*

■ At any rate, there was no impropriety in the removal. Defendants removed this case to federal court on the ground that complete diversity of citizenship existed because plaintiff, Wells Fargo, is a Utah corporation with its principal place of business in Utah, while defendants are foreign corporations. Defendants' present claim that the action was improperly removed rests on the twin premises (1) that plaintiff Wells Fargo, which owns the aircraft rented to defendants as a trustee, is not the real party in interest and (2) the beneficiaries of the trust are limited liability companies some of whose members are aliens, and thus are not diverse from the alien defendants. The argument is without merit.

■■ The Second Circuit recently revisited the legal principles applicable to such disputes over diversity. In order to be the real party in interest for purposes of maintaining an action in diversity, a plaintiff "must be [a] real and substantial part[y] to the controversy." *Oscar Gruss & Son, Inc. v. Hollander,* 337 F.3d 186, 193 (2d Cir.2003) (quoting *Navarro Sav. Assn. v. Lee,* 446 U.S. 458, 460, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980)). It is well established that the citizenship of the trustee, rather than that of the trust beneficiaries, is determinative for diversity purposes, so long as the trustee "possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Navarro Savings,* 446 U.S. at 464, 100 S.Ct. 1779.

Defendants argue that Wells Fargo here is not such a trustee, but is a mere agent for the true owners of the aircraft. The record, however, establishes that Wells

Fargo is a real party in interest such that its citizenship is determinative of diversity jurisdiction.

Defendants argue, correctly, that the burden of establishing jurisdiction is on the party asserting it, *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir.1998), and they therefore urge that every possible inference be drawn against the existence of jurisdiction. In the unusual posture of this case, however, this rule is of little practical value. While defendants now challenge the existence of jurisdiction, and seek to shift the burden of proof to Wells Fargo as the party defending the Court's jurisdiction, defendants conveniently forget that it was they themselves in the first instance who asserted that jurisdiction existed, relying on the citizenship of Wells Fargo to establish the requisite diversity. Having negotiated the transactions at issue, moreover, defendants were from the very beginning of the lawsuit at least as well placed as plaintiff to understand the roles of the respective parties and the reality of their stakes in this litigation. As noted above, parties cannot create federal jurisdiction by estoppel where it does not exist. At the same time, courts must be skeptical of belated factual claims by parties who first attempt, after the conclusion of an unsuccessful litigation, to contradict facts they earlier implicitly or explicitly asserted. In removing this action to federal court, with full knowledge of the nature of the transactions, defendants represented to the Court that Wells Fargo was a real party in interest. In order to attack that representation now, defendants must present more than naked assertions, and cannot rely on speculative doubts about facts relied on by Wells Fargo.

The trusts at issue, moreover, are not novel documents, but familiar financing devices in the airline industry. As such, they have been the subject of prior litigation, and this Court has held in earlier cases that a trustee such as Wells Fargo is a "real and substantial party to the controversy" who "sues not only as an agent, but also as an individual who has his own stake in the litigation." *Oscar Gruss*, 337 F.3d at 194. In three cases involving the efforts of TWA's creditors to collect on debts, this Court rejected the very argument made by defendants here, that the aircraft trustee was not the real party in interest and the Court should look to the citizenship of the beneficiaries to determine diversity jurisdiction. *See Mercantile–Safe Deposit & Trust Co. v. Trans World Airlines, Inc.*, 771 F.Supp. 90, 92 (S.D.N.Y.1991); *Connecticut Nat'l Bank v. Trans World Airlines, Inc.* 762 F.Supp. 76, 79 (S.D.N.Y.1991); *Fleet Nat'l Bank v. Trans World Airlines*, 767 F.Supp. 510, 514–15 (S.D.N.Y.1991). In the face of defendants' own representations to the Court, and the well-reasoned precedent interpreting the relationships in question, defendants bear a substantial burden in challenging Wells Fargo's stake in the litigation.

The Trust Agreements and aircraft leases in this case make clear that Wells Fargo has a sufficient independent stake in the matter in controversy to maintain this litigation in its own right. The Trust Agreements transfer exclusive title and ownership of the aircraft to Wells Fargo, and divest the beneficiaries of such ownership. (Gallagher Decl., Exs. 1–5, Art. 2, Art. 8.01.) The trustee is given the power to transfer and convey the aircraft (*id.* Art. 8.02), and indeed the leases in question constitute precisely such a conveyance. The Lease Agreements, in turn, provide that rent is due to Wells Fargo (Nagin Decl. Ex. 2, at 22 § 4.1), and provide that Wells Fargo, not the beneficiaries, has the "sole discretion [to] elect" what remedies to pursue if the rent goes unpaid (*id.* at 75 § 26). Thus, like the trustee in *Mercantile–Safe Deposit* and

*Connecticut Nat'l Bank,* the trustee here "owns the property in question," 762 F.Supp. at 79, is "specifically afford[ed] ... the power to seek return of the property at issue," *Mercantile–Safe Deposit,* 771 F.Supp. at 92, and indeed is "the only party that can seek return of the property." *Connecticut Nat'l Bank,* 762 F.Supp. at 79.

Defendants' effort to raise factual issues by quibbling over the nature of the trust arrangements fails in light of the express provisions of the transaction documents. Courts should avoid being drawn too deeply into such quibbles: As Judge Posner has said, "it would be a mistake to complicate the ascertainment of jurisdiction by making it turn on the precise division of responsibilities between" trustees and other parties. *May Dep't Stores Co. v. Federal Ins. Co.,* 305 F.3d 597, 599 (7th Cir. 2002). But in any event the transaction documents here make clear that Wells Fargo is a real party in interest in this litigation. Whatever other powers Wells Fargo may possess or lack, at the core of the Trust Agreements are provisions that empower it to own and convey the property, to receive rent payments, and to exercise the remedies provided in the leases. The powers granted by the Trust Agreements here are more than ample to support Wells Fargo's status as a party with an independent stake in the matter.

■ That is sufficient to make Wells Fargo's citizenship determinative of diversity, for even if other parties might *also* have been proper parties, "where multiple parties all have a financial interest in a lawsuit, a strategic choice of parties in order to maintain diversity is not considered to be collusive so long as the party chosen to bring the suit is in fact the master of the litigation." *Transcontinental Oil Corp. v. Trenton Products Co.,* 560 F.2d 94, 103 (2d Cir.1977). Like the plaintiff in *Transcontinental,* Wells Fargo "(1)

had negotiated and signed the agreement that was the subject of the action; (2) was most familiar with the matters in the suit; and (3) had a real and substantial financial interest in the outcome of the litigation." *Oscar Gruss,* 337 F.3d at 195 (summarizing *Transcontinental* ). For jurisdictional purposes, it is a real party in interest, and since it is diverse in citizenship from defendants, diversity jurisdiction exists and removal was proper.

CONCLUSION

Defendants' jurisdictional claims, put forward at (indeed, after) the last minute, in contradiction to their own earlier representations to the Court, are without merit. Their motion to dismiss (or, more properly, to remand to the state courts) for lack of federal subject matter jurisdiction is denied.

SO ORDERED.